USBC case no.  2:22-bk-10059-SB
Adversary no. 2:22-ap-01081-BB

cc: USBK

JS-6

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 2:22-cv-06591-SSS |
| ANTHONY JOSEPH PELLICANO, | **ORDER AFFIRMING JUDGMENT OF THE BANKRUPTCY COURT [DKT. 8]** |
| Chapter 7 Debtor, | |
| ANTHONY JOSEPH PELLICANO, | |
| Appellant, | |
| v. | |
| COLETTE MCDOUGALL, RICHARD W. COLBURN, CAROL COLBURN GRIGOR, AND KEITH W. COLBURN, | |
| Appellees. | |

1    Before the Court is Appellant/Debtor Anthony Joseph Pellicano's

2    ("Appellant") appeal of the Bankruptcy Court's order granting

3    Appellees/Creditors Colette McDougall, Richard W. Colburn, Carol Colburn

4    Grigor, and Keith W. Colburn ("Appellees") motion for summary judgment.

5    Appellant argues the Bankruptcy Court erred when it granted summary

6    judgment and held that collateral estoppel applies to a 2012 default judgment

7    against Appellant and that the judgment was not dischargeable under Section

8    523 of the bankruptcy code.  Appellant also argues the Bankruptcy Court made

9    erroneous discovery-related and evidentiary rulings.  For the reasons below, the

10   Court **AFFIRMS** the Bankruptcy Court's order and rulings.

11   **I.    BACKGROUND**

12   On or around the year 2000, Jacqueline Colburn ("Ms. Colburn") retained

13   Appellant as a private investigator to help with her divorce from Richard

14   Colburn ("Mr. Colburn").  Specifically, Ms. Colburn hired Appellant to wiretap

15   at least one private telephone line at Mr. Colburn's residence.

16   In 2006, a federal grand jury indicted Appellant on various counts of

17   misconduct arising from his unlawful wiretapping activities.  Neither Ms.

18   Colburn nor Appellees participated in the government's prosecution of him.  In

19   August 2008, a federal jury convicted Appellant, and he was sentenced to serve

20   180 months in custody at the Federal Correctional Institute located in Safford,

21   Arizona ("FCI Safford"), where he was incarcerated from 2009 through mid-

22   2011.  [Appellant's Excerpt of Record (Dkts. 8-1, 8-2, 8-3, 8-4, (collectively,

23   "ER")) at 333–34].

24   On or around December 4, 2007, Appellees—Mr. Colburn's children

25   from an earlier marriage and one of his former assistants—sued both Ms.

26   Colburn and Appellant for invasion of privacy ("State Court Action").  [ER at

27   1].  Appellees alleged that Ms. Colburn and Appellant invaded their privacy

28

-2-

1  when Appellant, acting on behalf of Ms. Colburn, wiretapped telephone lines

2  and recorded private conversations at Mr. Colburn's residence.  [ER at 103–14].

3  In March 2010, while Appellant was incarcerated at FCI Safford, Appellees

4  filed the First Amended Complaint against Ms. Colburn and Appellant.  [ER at

5  116–27].  On May 7, 2010, Appellant was personally served by registered

6  process server Sheri Rios.  [ER at 97–98, 128–30, 529–31].  Ms. Rios signed a

7  proof of service, which Appellees filed.  [ER at 128–30].  Appellant defaulted in

8  the State Court Action.  [ER at 132-33].

9       On January 19, 2012, Appellant was personally served with a deposition

10  subpoena and was deposed in person by Appellees' counsel in the State Court

11  Action, at a federal prison facility in Big Spring Texas.  [ER at 426, 436–50].

12       The State Court Action eventually proceeded to trial, which included the

13  presentation of evidence regarding Appellant's actions performed on behalf of

14  Ms. Colburn.  On October 19, 2012, the jury in the State Court Action

15  unanimously awarded Appellees $3.895 million in damages resulting from

16  Appellant's illegal wiretapping.  [ER at 98].  The verdict is supported by special

17  factual findings made by the jury in the Special Verdict Forms, including that

18  Appellant intentionally eavesdropped on or recorded Appellees' conversations

19  without their consent and wiretapped 289 telephone communications to or from

20  Mr. Colburn's residence.  [ER at 98, 134–43].  The jury also found Appellant

21  intentionally intruded on Appellees' telephone calls and that his actions would

22  be highly offensive to a reasonable person.  [ER at 99, 144–53].

23       On November 19, 2012, the California state court entered judgment,

24  including judgment by default against Appellant, stating in pertinent part:

25       As to defendant Anthony Pellicano, the Court finds that Anthony

26       Pellicano was properly served with a copy of the Summons on First
         Amended Complaint and First Amended Complaint filed by Plaintiffs in

27       this action, that Anthony Pellicano failed to answer the First Amended

28       Complaint or appear and defend the action within the time allowed by

-3-

1
2

law, and that Anthony Pellicano's default was entered by the clerk upon Plaintiffs' application.

3
4
5
6
7
8

In connection with the requested default judgment against Anthony Pellicano, the Court considered: (a) Plaintiffs' Request for Entry of Default Judgment; (b) Plaintiffs' Summary of Case in Support of Entry of Default Judgment Against Anthony Pellicano; and (c) the testimony given and the exhibits admitted into evidence at the trial of Jacqueline Colburn (in lieu of additional declarations, affidavits or live testimony duplicative of said trial testimony and evidence), and (d) other items of which Plaintiffs requested that the Court consider and/or take judicial notice.

9
10

[ER at 100, 202–05].  On November 21, 2012, Appellant was served with notice of entry of judgment.  [ER at 100, 206–13].

11
12
13
14
15
16

On October 21, 2021, Appellees obtained a writ of execution with respect to Appellant, and, on or around November 16, 2021, Appellees levied on Appellant's bank accounts.  On January 6, 2022, Appellant filed a Petition in Bankruptcy Court.  On April 1, 2022, Appellees filed an adversary proceeding within the bankruptcy proceeding, seeking to have Appellant's judgment debt adjudged nondischargeable under 11 U.S.C. § 523(a)(6).  [ER at 100].

17
18
19
20
21
22
23
24

Appellees subsequently filed their Motion for Summary Judgment ("MSJ"), asking the Bankruptcy Court to accord preclusive effect to the Default Judgment entered against Appellant in the State Court Action.  On August 30, 2022, after briefing and oral argument by counsel, the Bankruptcy Court granted Appellees' motion, accorded preclusive effect to the Default Judgment entered against Appellant in the State Court Action, and issued its "Judgment in Favor of Plaintiffs and Against Defendant Anthony Joseph Pellicano Determining Nondischargeability Pursuant to 11 U.S.C. § 523(a)(6)."  [ER at 562–63].

25
## II.    STANDARD OF REVIEW

26
27
28

District courts have jurisdiction to hear appeals from bankruptcy court final judgments, orders, and decrees.  *See* 28 U.S.C. § 158.  Such appeals are "taken in the same manner as appeals in civil proceedings generally are taken to

1    the courts of appeals from the district courts." *Id.* § 158(c)(2).  "[T]he district

2    court functions as an appellate court in reviewing a bankruptcy decision and

3    applies the same standards of review as a federal court of appeals." *In re*

4    *Crystal Props.*, *Ltd., L.P.*, 268 F.3d 743, 755 (9th Cir. 2001) (citation and

5    internal quotation marks omitted).

6        On appeal, a district court reviews a bankruptcy court's grant of summary

7    judgment *de novo* and may affirm it on any basis supported by the record.  *In re*

8    *Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008).  A bankruptcy court's refusal to

9    grant a continuance to permit additional discovery is reviewed under the abuse

10    of discretion standard; an abuse of discretion may be found only if the party

11    who requested an extension has already "diligently pursued its previous

12    discovery opportunities, and can demonstrate that allowing additional discovery

13    would have precluded summary judgment." *Id.*  Likewise, a bankruptcy court's

14    evidentiary rulings are reviewed for abuse of discretion.  *Id.* at 811.  "To reverse

15    on the basis of an erroneous evidentiary ruling, [the Court] must conclude not

16    only that the bankruptcy court abused its discretion, but also that the error was

17    prejudicial." *Id.*

18   **III.   LEGAL STANDARD**

19        A party may establish issue preclusion based on a prior default judgment

20    by filing a motion for summary judgment.  *See*, e.g., *Baldwin*, 249 F.3d at 920;

21    *In re Green*, 198 B.R. 564, 566 (9th Cir. BAP 1996).

22       **A.   Summary Judgment Standard**

23        Summary judgment is appropriate when there is no genuine issue as to

24    any material fact and the moving party is entitled to judgment as a matter of

25    law.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of

26    identifying the portions of the pleadings and record that it believes demonstrate

27    the absence of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S.

28    317, 323 (1986).  The moving party must show that "under the governing law,

1   there can be but one reasonable conclusion as to the verdict." *Anderson v.*

2   *Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

3        If the moving party has sustained its burden, the non-moving party must

4   then show that there is a genuine issue of material fact that must be resolved at

5   trial. *See Celotex*, 477 U.S. at 324. The non-moving party must make an

6   affirmative showing on all matters placed at issue by the motion as to which it

7   has the burden of proof at trial. *See id.* at 322; *Anderson*, 477 U.S. at 252. A

8   genuine issue of material fact exists "if the evidence is such that a reasonable

9   jury could return a verdict for the non-moving party." *Id.* at 248. "This burden

10  is not a light one. The non-moving party must show more than the mere

11  existence of a scintilla of evidence." *Oracle*, 627 F.3d at 387 (citing *Anderson*,

12  477 U.S. at 252).

13       When deciding a motion for summary judgment, the Court construes the

14  evidence in the light most favorable to the non-moving party. *See Barlow v.*

15  *Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991). Thus, summary judgment for the

16  moving party is proper when a "rational trier of fact" would not be able to find

17  for the non-moving party based upon the record taken as a whole. *Matsushita*

18  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

19      **B.   Collateral Estoppel Standard**

20      "Issue preclusion, also known as collateral estoppel, 'binds [] parties in a

21  subsequent action, whether on the same or a different claim' when 'an issue of

22  fact or law [has been] actually litigated and resolved by a valid final judgment.'"

23  *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1005 n. 5 (9th

24  Cir. 2002) (internal citations omitted).

25      "[C]ollateral estoppel principles do indeed apply in [Bankruptcy Court]

26  discharge exception proceedings pursuant to [11 U.S.C.] § 523(a)." *Grogan v.*

27  *Garner*, 498 U.S. 279, 284 n. 11 (1991); *see also Baldwin*, 249 F.3d at 917

28  ("[p]rinciples of collateral estoppel apply to [bankruptcy] proceedings seeking

exceptions from discharge brought under 11 U.S.C. § 523(a)"); *In re Black*, 487 B.R. 202, 211 (9th Cir. BAP 2013) ("Issue preclusion applies in exception to discharge proceedings").

A default judgment has preclusive effect in a bankruptcy proceeding to the same extent it would have in the state courts of the state in which it was rendered. *See Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995). California affords preclusive effect to default judgments entered by its courts. *See Gottlieb v. Kest*, 141 Cal. App. 4th 110, 149 (2006).

In California, "[c]ollateral estoppel precludes relitigation of issues argued and decided in prior proceedings." *Lucido v. Superior Court*, 51 Cal. 3d 335, 340 (1990). California courts will apply collateral estoppel if certain threshold requirements are met, and if application of preclusion furthers the public policies underlying the doctrine. *Id.* at 341, 343.

The five threshold *Lucido* requirements are: (1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding; (2) this issue must have been actually litigated in the former proceeding; (3) it must have been necessarily decided in the former proceeding; (4) the decision in the former proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. *Baldwin,* 249 F.3d at 917–18, citing *Lucido*, 51 Cal.3d at 341. The party asserting collateral estoppel bears the burden of establishing these elements. *Id.*

The Ninth Circuit has interpreted California law as allowing collateral estoppel based on a default judgment if, in addition to the five *Lucido* requirements cited above, (1) the defendant was personally served with summons *or* had actual knowledge of the existence of the prior litigation, and had a fair opportunity to litigate; and (2) the record of the prior proceeding shows either an express finding upon the allegation for which preclusion is

1   sought, *or* that the court in the prior proceeding necessarily decided the issue

2   ("preclusive default judgment requirements").  *See In re Cantrell*, 329 F.3d

3   1119, 1123–24 (9th Cir. 2003).

4   **IV.    DISCUSSION**

5       **A.    The Bankruptcy Court Did Not Err When It Granted**

6          **Summary Judgment in Favor of Appellees**

7       Appellant argues there exist genuine issues of material fact regarding

8   several of the aforementioned *Lucido* and preclusive default judgment

9   requirements.  As discussed below, the Court finds no such genuine issues exist

10  and affirms the Bankruptcy Court's grant of summary judgment.

11         **1.    *There is no genuine issue of material fact as to whether***

12            ***Appellant was aware of the State Court Action against him***

13            ***or served with process***

14      Appellant argues there is a genuine issue of material fact regarding

15  whether he had actual knowledge of the existence of the state court action or

16  was served with process.  Appellees disagree.  The Court finds there is no

17  genuine issue of material fact as to whether Appellant was aware of the State

18  Court Action and thus finds any dispute regarding whether he was served

19  immaterial.

20      Appellees point to Appellant's deposition in the State Court Action as

21  evidence of his awareness.  Indeed, Appellant was personally served with a

22  deposition subpoena in the State Court Action.  [ER at 434–35].  On January 19,

23  2012, Appellant was deposed in the State Court Action and was explicitly told a

24  default had been entered against him.  [ER at 442].  Moreover, Appellant

25  reviewed and noted several spelling corrections to be made in the deposition

26  transcript, which contained the State Court Action case name and caption.  [ER

27  at 437–43].

28

1    Appellant does not dispute that he was served with a deposition and

2    deposed in the State Court Action.  Instead, he argues that "[e]ven though the

3    Colburn Parties had deposed Mr. Pellicano, Mr. Pellicano had no reason to

4    suspect that discovery proceeding was for a lawsuit occurring independent of" a

5    separate, consolidated lawsuit against him.  [Dkt. 8 at 25].  However,

6    Appellant's claimed ignorance and confusion regarding the nature of the

7    deposition does not create a genuine issue of material fact regarding his notice

8    or awareness of the lawsuit, particularly where the subpoena, deposition

9    testimony, and deposition corrections expressly relate to the State Court Action.

10   Even viewing the facts in the light most favorable to Appellant, favorable light

11   cannot contradict clear text and facts.  Thus, there is no genuine issue of

12   material fact that Appellant had actual knowledge of the existence of the State

13   Court Action.  Moreover, because the first preclusive default judgment

14   requirement requires only either service or awareness, Appellant's awareness of

15   the State Court Action renders his arguments regarding proper service moot.

16        **2.**      ***There is no genuine dispute of material fact regarding***

17                    ***whether the jury in the State Court Action found willful***

18                    ***and malicious conduct by Appellant toward Appellees***

19   Appellant argues there is a genuine issue of material fact regarding

20   whether his conduct was willful and malicious.  "Both willfulness and

21   maliciousness must be proven to block discharge under section 523(a)(6)."  *In*

22   *re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010).

23        a.      Willfulness under 11 U.S.C. § 523(a)(6)

24   The Ninth Circuit has held that "the willful injury requirement of §

25   523(a)(6) is met when it is shown either that the debtor had a subjective motive

26   to inflict the injury or that the debtor believed that injury was substantially

27   certain to occur as a result of his conduct." *Petralia v. Jercich (In re Jercich)*,

28   238 F.3d 1202, 1208 (9th Cir. 2001) (emphasis added). Further, the

debtor/defendant "is charged with the knowledge of the natural consequences of his actions . . . In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Ormsby*, 591 F.3d at 1206.

The jury in the State Court Action found, based on evidence presented, that Appellant's actions were willful. The jury heard evidence that Appellant targeted Plaintiffs' telephone calls for wiretapping, and he thus must have known that Appellees' injuries (i.e., the invasion of their privacy) were a natural consequence and "substantially certain to occur" as a result of his conduct. Appellees submitted evidence of over 500 telephone conversations between themselves and Mr. Colburn during the relevant period of wiretapping. Ms. Colburn's former assistant (Brenda Barry) testified at trial that Ms. Colburn did not like Appellees, was jealous of Colette McDougall's working relationship with Ms. Colburn's husband, and that she wanted to be alerted any time that any of the Appellees called or were present at Mr. Colburn's residence. [ER at 428-429 (¶ 18); 505–19]. Ms. Colburn's massage therapist (David Powers) testified at trial Ms. Colburn had told him that all the lines at the Residence had been wiretapped. [ER at 429 (¶ 19); 520–28]. Indeed, the jury found that Appellant "on behalf of Jacqueline Colburn intentionally eavesdrop[ped] on or record[ed] [Appellees'] conversation by using an electronic device," and "on behalf of Jacqueline Colburn intentionally intrude[d] in [Appellees'] telephone calls to and from the residence and home office of . . . Richard D. Colburn[.]" [ER at 98–99 (¶¶ 6–7); 134–53]. Thus, there is no genuine issue of fact that Appellant's conduct was proven to be willful and that the jury decided as much.

b.   Maliciousness under 11 U.S.C. § 523(a)(6)

For purposes of 11 U.S.C. § 523(a)(6), a "malicious injury" involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4)

1   is done without just cause or excuse.  See *Ormsby*, 591 F.3d at 1207.  "Malice

2   may be inferred based on the nature of the wrongful act."  *Id.*

3        Appellant argues that the jury was not instructed on the Ninth Circuit

4   definition of "malice" and did not make an express finding regarding malice.

5   "The elements of a state court action are rarely identical to those for proving a

6   willful and malicious injury.  However, issue preclusion will apply if the facts

7   established by the [prior] Judgment establishes that" the defendant-debtor's

8   tortious act "was a willful and malicious injury."  *In re Gould*, 2014 WL

9   4179954, *8 (9th Cir. BAP August 25, 2014).

10        Here, the jury's findings meet the definition of "malicious injury" as

11   articulated by *Ormsby*, 591 F.3d at 1207:  (1) the illegal wiretapping and

12   invasion of privacy was the wrongful act; (2) the jury found that Appellant

13   committed wiretapping intentionally; (3) the wiretapping necessarily caused

14   emotional distress and other injury, in that Plaintiffs' privacy was invaded (as

15   found by the jury, who awarded $1 million in emotional distress damages); and

16   (4) even Appellant does not argue that he had just cause or any excuse.  Thus,

17   there is no genuine issue of material fact that Appellant's actions were proven to

18   be malicious and that the jury decided as much.

19        **3.**   ***There is no genuine issue of material fact that willfulness***

20             ***and maliciousness were actually litigated and necessarily***

21             ***decided in the State Court Action***

22        Appellant argues that willfulness and malicious were not actually litigated

23   or necessarily decided.  For collateral estoppel to apply, the issue in question–

24   here, whether Appellant's conduct was willful and malicious–must have been

25   "actually litigated" and "necessarily decided" in the former action.  *See*

26   *Baldwin*, 249 F.3d at 917–18 (citing *Lucido*, 51 Cal. 3d at 341).  For an issue to

27   have been "actually litigated" in the prior proceeding, a court must either (a)

28   find that the prior court made an express finding on the issue, or (b) conclude

-11-

1    that the issue was necessarily decided in the prior proceeding.  "[A]s a

2    conceptual matter, if an issue was necessarily decided in a prior proceeding, it

3    was actually litigated in that proceeding." *Id.* at 919.  As defined by the *Lucido*

4    court, "necessarily decided" means that resolution of the issue was not "'entirely

5    unnecessary' to the judgment in the initial proceeding." *Lucido*, 51 Cal. 3d at

6    342.

7        The willfulness and malicious nature of Appellant's actions were actually

8    litigated as demonstrated by the express findings by the jury, which found that

9    Appellant intentionally eavesdropped and recorded Appellees' conversations

10   and intentionally intruded in telephone calls to and from the residence and home

11   office of Richard Colburn.  [ER at 98-99 (¶¶ 6, 7); 134-143; 144-153].

12       The willful and malicious nature of Appellant's conduct were also

13   necessarily decided by the jury.  As Appellees note, "even though Plaintiffs

14   obtained a default judgment against Pellicano, they were still required to present

15   evidence of Pellicano's involvement, methods, and misconduct in order to prove

16   their case against Jacqueline Colburn." [Dkt. 9 at 29].  In other words,

17   Appellees could not have litigated their claims against Ms. Colburn without

18   presenting evidence of Appellant's actions on her behalf.

19       In response, Appellant argues that in the Ninth Circuit, maliciousness

20   "requires proof of a defendant's *subjective intent*." [Dkt. 8 at 29 (emphasis in

21   original)].  Not so.  As recognized by both parties, with regard to Section

22   523(a)(6), "willful" means **either** the "subjective intent of the actor to cause

23   harm **or** the subjective knowledge of the actor that harm is substantially certain

24   to occur." [Dkt. 8 at 26 (citing *In re Khaligh*, 338 B.R. 817, 831 (B.A.P. 9th

25   Cir. 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007)) (emphasis added); Dkt. 9 at 27

26   (citing *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001))].

27   Thus, even without Appellant's subjective intent to cause harm, his subjective

28

1    knowledge that the invasion of Appellees' privacy was substantially certain to

2    occur would suffice to establish willfulness.

3           Nevertheless, here, both possible definitions of "willful" are met.  The

4    jury expressly found that Appellant intentionally eavesdropped, recorded, and

5    intentionally intruded in Appellees' telephone calls.  Such findings suffice to

6    demonstrate Appellant's subjective intent to cause harm, i.e. intentional

7    eavesdropping and intrusion, as well as his subjective knowledge that harm, i.e.

8    invasion of privacy, is substantially certain to occur.  Certainly, one does not

9    unlawfully wiretap a telephone line without expecting to listen to and invade

10   private conversations.  Thus, there is no genuine issue of material fact that the

11   willfulness and maliciousness of Appellant's actions were actually litigated and

12   necessarily decided in the State Court Action.

13          **4.**    *There is no genuine issue of material fact that the jury's*

14                 *findings in the State Court Action were against Appellant*

15          Appellant argues that he is not "the same, or in privity with, the party to

16   the former proceeding."  [Dkt. 8 at 29 (citing *In re Harmon*, 250 F.3d at 1245)].

17   Appellant argues that the State Court Action was against only Ms. Colburn and

18   not himself; but he is wrong.  The State Court Action was against both Ms.

19   Colburn and him, the jury made findings against both Jacqueline Colburn and

20   him, and the state court issued a default judgment against him.  Thus, it is

21   indisputable that Appellant is the same Anthony Pellicano who was a party to

22   the State Court Action.

23          Appellant's argument is not actually about the privity of parties in the

24   bankruptcy proceeding and State Court Action.  Indeed, Appellant does not

25   dispute that he is the same Anthony Pellicano that was named a party to the

26   State Court Action.  Instead, the heart of his argument is that he did not have an

27   opportunity to meaningfully participate in the State Court Action, which merely

28   reiterates his arguments about his purported lack of awareness, opportunity to

litigate, and sufficiency of findings against him, all of which this Court has already addressed above.  Thus, there is no genuine issue of material fact that the jury's findings in the State Court Action were against Appellant.

**5.**       *The application of the doctrine of collateral estoppel against Appellant is fair and consistent with public policy*

Appellant argues the application of collateral estoppel against him would be neither fair nor consistent with public policy.  Specifically, Appellant argues that at 78 years old and after serving more than 15 years in prison, he has already paid a "heavy price" for his past wrongdoings.  He also argues that the State Court Action default judgment came as a complete surprise and threatens to upend his life.

However, Appellant's arguments miss the mark and fail to establish that collateral estoppel based on default judgment would be unfair or inconsistent with public policy.  But Appellant's age, his sentence from a previous case, and that the default judgment was purportedly a "complete surprise" and "threatens to upend his life," without more, are insufficient to prevent collateral estoppel, particularly where there is no genuine issue of material fact as to the propriety of the default judgment or its preclusive effect.  Instead, as Appellees note, giving the default judgment its proper preclusive effect preserves the integrity of the judicial system, promotes judicial economy, and protects litigants from harassment by vexatious litigation.

Accordingly, the Bankruptcy Court did not err when it granted summary judgment and held that collateral estoppel applies to a 2012 default judgment against Appellant and that the judgment was not dischargeable under Section 523 of the bankruptcy code.

**B.** **The Bankruptcy Court Did Not Err When It Did Not Grant Appellant's Request for Discovery on the Issue of Whether He Was Properly Served**

Appellant argues the Bankruptcy Court erred when it denied his request for discovery regarding the issue of whether he was properly served with the First Amended Complaint in the State Court Action.  A Bankruptcy Court's refusal to grant a continuance to permit additional discovery is reviewed under the abuse of discretion standard; an abuse of discretion may be found only if the party who requested an extension has already "diligently pursued its previous discovery opportunities, and can demonstrate that allowing additional discovery would have precluded summary judgment." *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008).  As discussed above, whether Appellant was properly served is a moot issue because there is no issue of material fact that he was otherwise aware of the State Court Action.  Therefore, Appellant is necessarily unable to demonstrate "that allowing additional discovery would have precluded summary judgment." *Id.*  Accordingly, the Bankruptcy Court did not abuse its discretion when it denied Appellant discovery on the issue of service, and the Court affirms its ruling.

**C.** **The Bankruptcy Court Did Not Abuse Its Discretion in Making Its Evidentiary Rulings**

Appellant argues the Bankruptcy Court erred in three evidentiary rulings. A Bankruptcy Court's evidentiary rulings are reviewed for abuse of discretion. *In re Slatkin*, 525 F.3d at 811.  "To reverse on the basis of an erroneous evidentiary ruling," the Court must "conclude not only that the bankruptcy court abused its discretion, but also that the error was prejudicial." *Id.*

1. ***Sustaining Appellees' Objections to Appellant's Declaration***

First, Appellant argues that the Bankruptcy Court abused its discretion when it sustained the Colburn Parties' objections to portions of his sworn statements on the basis that the issues had already been decided by the state court jury. As a threshold matter, Appellant's argument sorely lacks any semblance of specificity. In his opening brief, Appellant fails to identify the evidence at issue or any prejudice that resulted from its exclusion. Moreover, in reply, Appellant only vaguely asserts that the evidence at issue concerned the number of telephone lines that had been wiretapped and the reason for his actions, without specifying the actual reason. According to Appellant, the evidence demonstrates that his conduct was not "willful and malicious" under Section 523(a)(6). These ambiguous statements alone are insufficient to demonstrate the Bankruptcy Court's purported error.

Even giving Appellant the benefit of the doubt and reviewing Appellees' objections to his declaration [ER at 393–95] as well as the Bankruptcy Court's ruling thereon [ER at 768–70], Appellant's cries of prejudice ring hollow. Contrary to Appellant's representations, none of the statements from Appellant's declaration to which Appellees objected refer to the number of telephone lines that had been wiretapped or the reason for his actions, [ER at 393–95, 768–70], and Appellant has not specifically identified any such sworn statements nor objections thereto. Thus, Appellant's claimed prejudice based on absent evidence necessarily also does not exist. The Bankruptcy Court therefore did not err in sustaining Appellees' objections to Appellant's declaration, and the Court affirms its ruling.

2. ***Considering Appellees' Evidence Presented on Reply***

Second, Appellant argues the Bankruptcy Court erred when it considered evidence presented for the first time in Appellees' summary judgment reply

1    brief.  Generally, a moving party may not raise an issue for the first time in a

2    reply brief.  *See Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259 (9th Cir. 1996)

3    (citing *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir.1990)).  Indeed,

4    "[a] district court may refuse to consider new evidence submitted for the first

5    time in a reply if the evidence should have been presented with the opening

6    brief."  *Wallace v. Countrywide Home Loans, Inc.*, No. CV 08-1463, 2009 WL

7    4349534, at *7 (C.D. Cal. Nov. 23, 2009).  "Evidence submitted in direct

8    response to evidence raised in the opposition, however, is not 'new.'"  *Advanced*

9    *Media Networks LLC v. Row 44 Inc.*, No. CV 12-11018, 2014 WL 5760545, at

10   *1 (C.D. Cal. Nov. 4, 2014) (quoting *In re ConAgra Foods, Inc.*, 2014 WL

11   4104405, at *33 n.87 (C.D. Cal. August 1, 2014)).

12        Appellant argues "the Colburn Parties waited until the reply brief before

13   submitting evidence that supposedly showed Mr. Pellicano had actual

14   knowledge of their lawsuit. By so doing, the Colburn Parties deprived Mr.

15   Pellicano the opportunity to elaborate on why he did not know about the

16   Colburn Action."  [Dkt. 10 at 15].  In opposition, Appellees argue that the

17   additional materials (i.e. proof of service of the initial Complaint, the Pellicano

18   depositions excerpts, and related correspondence) did not raise new issues but

19   merely responded to Appellant's opposition brief wherein he claimed he was

20   never served and had no knowledge of the State Court Action.

21        The issue is not as clear as either party presents.  On one hand, in

22   Appellees' initial summary judgment brief, they only raised the issue of whether

23   Appellant was served with the amended complaint in the State Court Action,

24   they did not initially raise the issue of his general awareness of the lawsuit or

25   any evidence relevant thereto until their reply brief.  On the other hand,

26   Appellees' reply brief was not the first instance in which Appellant's awareness

27   of the State Court Action was raised.  The issue of awareness was first raised in

28   Appellant's opposition brief when he offered additional "substantial reasons" to

support his claim that he was never served.  By raising his purported lack of
awareness, Appellant opened the door to the issue of whether he was aware of
the State Court Action.  Thus, Appellees' additional materials did not raise new
issues on reply, and the Bankruptcy Court did not err in considering them.[1]  The
Court thus affirms its ruling.

### 3.    *Ruling on Appellant's evidentiary objections*

Third, Appellant argues the Bankruptcy Court erred when it failed to rule
on his evidentiary objections and relied on hearsay evidence submitted by
Appellees.  However, as Appellees note, the Bankruptcy Court overruled all of
Appellant's objections and thus did not err by failing to rule.  [ER at 734:23].
Additionally, Appellant fails to identify any prejudice, and the Court finds none.
Appellant claims the purportedly erroneous evidence concerned the issue of
whether he was served, but as already discussed above, service is moot because
there is no genuine issue of material fact that he was aware of the State Court
Action.  Thus, the Bankruptcy Court did not err, and the Court affirms its ruling.

## V.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's
order granting summary judgment and **ORDERS** as follows:

1.    The Court **AFFIRMS** the Bankruptcy Court's order granting
      summary judgment in favor of Appellees, finding that collateral
      estoppel applies to a 2012 default judgment against Appellant and

---

[1] Even if the Bankruptcy Court had erred in considering Appellees' additional
materials, Appellant has not identified any prejudice stemming therefrom.
Moreover, in the instant appeal, Appellant has had an opportunity to "elaborate
on why he did not know about the Colburn Action" [Dkt. 10 at 15], but
nevertheless failed to convince this Court that he was unaware of the State Court
Action.  Therefore, even if the Bankruptcy Court had erred, Appellant did not
suffer prejudice, and the Court thus would not reverse the Bankruptcy Court's
ruling.

that the judgment was not dischargeable under Section 523 of the
bankruptcy code.

2.     The Court **AFFIRMS** the Bankruptcy Court's ruling denying
Appellant's request for time to conduct discovery on the issue of
whether he was properly served.

3.     The Court **AFFIRMS** the Bankruptcy Court's ruling sustaining
Appellees' objections to Appellant's Declaration.

4.     The Court finds the Bankruptcy Court did not err when it
considered Appellees' evidence presented on reply concerning
Appellant's awareness of the State Court Action.

5.     The Court finds the Bankruptcy Court did not err by failing to rule
on Appellant's evidentiary objections.  The Court **AFFIRMS** the
Bankruptcy Court's ruling overruling Appellant's evidentiary
objections to purported hearsay evidence regarding whether he was
properly served.

**IT IS SO ORDERED.**

Dated: March 15, 2023

_____
SUNSHINE S. SYKES
United States District Judge